408 S.E.2d 602 (1991)
Glen Wayne MILES
v.
COMMONWEALTH of Virginia.
Record No. 0784-90-2.
Court of Appeals of Virginia.
September 10, 1991.
Rehearing En Banc Granted October 18, 1991.
*603 Roger L. Gregory (Wilder & Gregory, Richmond, on brief), for appellant.
Eugene Murphy, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., on brief), for appellee.
Present: BARROW, BENTON and ELDER, JJ.
ELDER, Judge.
Glen Wayne Miles, the defendant, was convicted of possession of cocaine with the intent to distribute. On appeal, he asserts: (1) the affidavit in support of the search warrant for his home failed to allege material facts constituting probable cause; (2) even if the affidavit established probable cause, the probable cause was stale when the search warrant was issued; (3) the affidavit was so lacking in indicia of probable cause that the police officer's and magistrate's belief in its existence was unreasonable and without good faith; and (4) the search warrant was overbroad in that it failed to identify with sufficient specificity the items to be seized. We affirm.
On August 11, 1989, Sergeant James B. Fitzgerald filed the following affidavit in support of his application for a search warrant for the defendant's home:
On August 11, 1989 your affiant was contacted by Sergeant J.J. Bishop ... who related that he had responded to St Lukes Hospital with reference to a Drug Overdose resulting in the death of GARY BALL.... According to Bishop BALLs roomate LOREN HENERSHOT told ... Bishop that he had observed BALL use cocaine in the past and on that occasion he had visited a location in Henrico County prior to observing BALL use cocaine and that he believed BALL had acquired the cocaine at that location. At 4 am your affiant met with HENDERSHOT and BALLs girlfrie[n]d ... GENEVIEVE WOOLFORD.... After interviewing both the subjects the following was discover[e]d. Prior to this date HENDERSHOT had on three separate occasions been to the location described in paragraph 2[.] HENDERSHOT states that he believes this is where BALL obtained cocaine. HENDERSHOT admits having used cocaine in the past and states that he is famil[i]ar with the physical characteristics of cocaine. According to HENDERSHOT approximately one month ago he and BALL went to the location described in paragraph 2 to purchase cocaine. HENDERSHOT states to the best of his knowledge BALL did not have any cocaine prior to visiting the location. HENDERSHOT further states that he and BALL went directly home after visiting the location at which time... HENDERSHOT observed BALL in possession of cocaine. HENDERSHOT was questioned by your affiant as to additional sources of cocaine which BALL may have used in the past, HENDERSHOT responded that it was his opinion that BALL had no other source other than the subject at 9005 Old Staples Mill Rd. After further questioning of HENDERSHOT it was apparent that he did not know the person who resided at 9005 Old Staples Mill Rd. Your affiant then interviewed GENEVIEVE WOOLFORD who identified herself as BALL's girlfriend. WOOLFORD told your affiant that she had asked BALL on more tha[n] one occasion to stop using cocaine but he refused. On one occasion *604 recently she asked him to get off drugs and that BALL responded that he had already paid $300.00 for the drugs. During one date with BALL, WOOLFORD stated that he took her to the location described in Paragraph 2 but she was not sure if BALL obtained drugs but did state that he was going to see a subject who WOOLFORD believes was named WAYNE. On August 10, 1989 HENDERSHOT and WOOLFORD stated that BALL received a telephone call at approximately 7:30 pm after which he left the [Hanover] residence ... and subsequently returned at approximately 9 pm. It was at this time that according to HENDERSHOT and WOOLFORD that BALL began to act strange. Due to the violent nature BALL was exhibiting HENDERSHOT called the Hanover Sheriffs Office for assistance. After the interview of HENDERSHOT and WOOLFORD your affiant and Inv R.A. Cosby... had the two take them to the location which they had visited in the past. At approximately 5:30 am your affiant observed [two vehicles parked at the residence. They were both registered to GLEN W. MILES at that address.] Inv. R.A. Cosby ... discovered ... that in 1977 Henrico County Police arrested a GLEN W. MILES for assault. A further check with the Department of Motor Vehicles reveals that GLEN WAYNE MILES has a Virginia operators license and that this license is issued to GLEN WAYNE MILES of 9005 Old Staples Mill Road. This same subject received a Traffic Summons ... on 12-5-87 [which] indicated that his address was in fact 9005 Old Staples Mill Road.
Based on the statements made to your affiant by both HENDERSHOT and WOOLFORD it is your affiants experience that the subject who resides at 9005 Old Sta[p]les Mill Road has in the past distributed cocaine to GARY BALL. Further your affiant would assert that in his experience as a drug investigator it is common to find records detailing debts owed and balances for drug transactions. Additionally it has been my experience that drug traffickers keep photographs of other drug traffickers and [their] telephone numbers. All of this paraphernalia is necessary for a trafficker to conduct business. It is for these reason[s] that your affiant firmly believes that a[t] 9005 Old Sta[p]les Mill Road there [are] now business records, telephone books and photographs which [will] assist police in establishing that a drug operation has been and is currently being run from 9005 Old Sta[p]les Mill Road.
On the affidavit, Sergeant Fitzgerald indicated that he had personal knowledge of the facts set forth and stated:
During my tenure as a drug Investigator your affiant recovered some type of records on over 95% of those persons arrested or searched. It has been your affiant[`s] experience that persons engaged in the illegal distribution of drugs keeps records.
On that same date, a search warrant was issued for the defendant's home. The objects sought in the search were "Business records establishing an illicit drug operation, telephone books listing buyers and photo albums which would assist police in identifying additional co-conspirators." The search warrant was issued in relation to "[c]onspiracy to Distribute a Schedule II Controlled substance; Cocaine."
Upon executing the search warrant, cocaine was found in the residence. The trial court overruled the defendant's motion to suppress, holding that the magistrate had a substantial basis for concluding that probable cause existed, and even if no probable cause existed, the good faith exception set forth in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) would apply.
The existence of probable cause is determined by examining the "totality-of-the-circumstances." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). "The task of the issuing magistrate is simply to make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying *605 hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. The duty of the reviewing court is "simply to ensure that the magistrate had a `substantial basis for ... conclud[ing]' that probable cause existed." Id. at 238-39, 103 S.Ct. at 2332 (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); see also Garza v. Commonwealth, 228 Va. 559, 563-64, 323 S.E.2d 127, 129 (1984); Lanier v. Commonwealth, 10 Va.App. 541, 547, 394 S.E.2d 495, 499 (1990); Corey v. Commonwealth, 8 Va.App. 281, 286-87, 381 S.E.2d 19, 21-22 (1989). "[A] magistrate may draw reasonable inferences from the material supplied to him and ... his determination of probable cause `should be paid great deference by reviewing courts.'" Williams v. Commonwealth, 4 Va.App. 53, 68, 354 S.E.2d 79, 87 (1987) (citation omitted).
In examining the "totality of the circumstances" supporting the probable cause determination, we must ordinarily consider the "veracity or reliability" of Hendershot and Woolford and whether the information they supplied was supported by a sufficient "basis of knowledge." See Corey, 8 Va.App. at 289, 381 S.E.2d at 23 (citing Gates, 462 U.S. at 238, 103 S.Ct. at 2332). Here, the defendant asserts only that Hendershot's and Woolford's information was not supported by a "sufficient basis of knowledge" to provide the magistrate with a "substantial basis" for concluding that probable cause existed to issue a search warrant for "business records establishing an illicit drug operation." We agree.
The affidavit reveals that Hendershot had been to the defendant's home on three occasions. On one occasion, to the best of Hendershot's knowledge, Ball did not have any cocaine prior to visiting the defendant. After the visit, Hendershot and Ball went directly home, at which time Ball was in possession of cocaine. In Hendershot's opinion, Ball had no other source of cocaine. Hendershot also stated that on August 10, 1989, Ball received a telephone call and left the residence. When he returned, Ball began to act "strange" and the police were called. Ball subsequently died of an overdose.
Woolford stated that, while on a date with Ball, he took her to the defendant's home, but she was not sure if Ball obtained drugs. Woolford also testified concerning the telephone call Ball received on August 10, 1989 and his subsequent actions.
These statements could not provide the requisite probable cause to issue a search warrant. Neither Hendershot nor Woolford actually saw Ball or anyone else receive drugs at the defendant's home. Neither had even seen the defendant at the residence, and, in fact, neither stated that they had been inside the residence. Neither individual could identify the defendant as the person who called Ball on August 10, 1989. Hendershot could only state that he "believes" Ball obtained cocaine at the residence. Woolford "was not sure" if Ball obtained drugs at the residence. Also, the police corroboration consisted solely of determining that the defendant lived at the residence identified by the informants. Most importantly, neither informant mentioned the possible existence of business records, telephone books, or photo albums which were the items to be seized under the search warrant.
"A deficiency in the basis of knowledge, however, can be supplemented by a particularly detailed tip." Corey, 8 Va.App. at 289, 381 S.E.2d at 23 (quoting Gates, 462 U.S. at 234, 103 S.Ct. at 2330). Here, the informants' information as represented in the affidavit was not sufficiently detailed as to overcome the basis of knowledge deficiency.
We conclude that the magistrate lacked a "substantial basis" for finding that probable cause existed. Therefore, we need not determine whether the probable cause information was "stale" or whether the warrant was defective because it was overbroad. The precise reasons why the affidavit was defective need not be addressed if the good faith exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 *606 L.Ed.2d 677 (1984), is applicable. Atkins v. Commonwealth, 9 Va.App. 462, 464, 389 S.E.2d 179, 180 (1990).
In Leon, the Supreme Court noted that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates," 468 U.S. at 916, 104 S.Ct. at 3417, and that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." Id. at 921, 104 S.Ct. at 3419. Thus, the Court stated:
In short, where the officer's conduct is objectively reasonable, "excluding the evidence will not further the ends of the exclusionary rule in any appreciable way...."
This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.
Id. at 919-20, 104 S.Ct. at 3418-19 (citation omitted) (emphasis added); see also McCary v. Commonwealth, 228 Va. 219, 232, 321 S.E.2d 637, 644 (1984); Lanier, 10 Va.App. at 547, 394 S.E.2d at 499.
The exclusionary rule, however, may still be applied when an officer obtains a warrant. Evidence is properly excluded:
(1) [W]here the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit" so lacking in indicia of probable cause" as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.
Atkins, 9 Va.App. at 464, 389 S.E.2d at 180 (citing Leon, 468 U.S. at 923, 104 S.Ct. at 3421). The defendant has addressed only the third and fourth of these situations.
We conclude that the search warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923, 104 S.Ct. at 3421. As in Leon, the warrant here was not a "bare bones" affidavit. See id. at 926, 104 S.Ct. at 3422. An objectively reasonable belief that probable cause existed was provided by: (1) Hendershot's statement that he visited the defendant's home with Ball; (2) Ball did not have cocaine when he went to the defendant's home; (3) Ball was in possession of cocaine after the visit; (4) Hendershot did not know of any other source of cocaine; (5) Officer Fitzgerald's statement that records were found in 95% of cases when a drug trafficker was searched or arrested; and (6) a search warrant was issued by a neutral and detached magistrate. As in Leon, the affidavit "provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." Id. Therefore, we cannot say that the officer could not have "`harbored an objectively reasonable belief in the existence of probable cause.'" Corey, 8 Va.App. at 289, 381 S.E.2d at 23 (quoting Leon, 468 U.S. at 923, 104 S.Ct. at 3421).
The warrant also was not so facially overbroad in its description of the items to be seized that the executing officer could not "reasonably presume it to be valid." Leon, 468 U.S. at 923, 104 S.Ct. at 3421. "[T]he specificity required for a warrant varies with the circumstances within a `practical margin of flexibility.'" United States v. Shilling, 826 F.2d 1365, 1369 (4th Cir.1987), cert. denied, 484 U.S. 1043, 108 S.Ct. 777, 98 L.Ed.2d 863 (1988) (quoting United States v. Torch, 609 F.2d 1088, 1990 (4th Cir.1979), cert. denied, 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980)); see also Code § 19.2-54 (warrant must reasonably describe items to be seized). In Shilling, the Court stated, "Although the warrant uses general terms (such as books, records, bank statements, etc.) without detailed descriptions, we consider this to be acceptable, since the Government could hardly have known in detail what precise business records were maintained by the defendant." 826 F.2d at 1369. Here, we need not decide whether the warrant was overbroad, and therefore, defective. Rather, *607 we need decide only whether the officer could reasonably presume it to be valid. We conclude that the warrant in this case was sufficiently descriptive that the officer could have reasonably presumed it to be valid.
For the foregoing reasons, we conclude that the trial court did not err in admitting the cocaine into evidence. Accordingly, the decision of the trial court is affirmed.
Affirmed.
BENTON, Judge, dissenting.
I agree with the majority that the magistrate who issued the warrant lacked a substantial basis for finding that probable cause existed. I disagree that the warrant is saved by application of the good faith exception to the federal exclusionary rule.[1]
The good faith exception to the warrant requirement of probable cause, as announced in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), does not apply if "a reasonably well-trained [police] officer ... would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). Suppression remains the appropriate remedy when the officer's conduct is not objectively reasonable. Leon, 468 U.S. at 923, 104 S.Ct. at 3421.
[Where] a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable. But it is different if no officer of reasonable competence would have requested the warrant, i.e., his request is outside the range of the professional competence expected of an officer. If the magistrate issues the warrant in such a case, his action is not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty. The officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate.
Briggs, 475 U.S. at 346, n. 9, 106 S.Ct. at 1098, n. 9. The Supreme Court's standard of objective reasonableness necessarily means that the police officers must "have a reasonable knowledge of what the law prohibits." Leon, 468 U.S. at 919, n. 20, 104 S.Ct. at 3419, n. 2.
In this case, the magistrate acted as a "rubber stamp" by approving a search based on an affidavit totally lacking any indicia of probable cause. The Supreme Court in Leon did not hold that a search is lawful in all cases when the police have obtained a warrant. Significantly, in Leon the police conducted a substantial independent investigation in support of the informant's facts, id. at 901, 916, 104 S.Ct. at 3409, 3417, and the officer's warrant application was reviewed by several government attorneys. Id. at 902, 104 S.Ct. at 3409. Objective "good faith" presupposes some minimum standard of police conduct and requires an inquiry into all the circumstances. Id. at 922 n. 23, 923 n. 24, 104 S.Ct. at 3420 n. 23, 3420 n. 24. Leon clearly does not mean that good faith exists when a magistrate issues a warrant that lacks probable cause but merely has some apparent tinge of justification because it is supported by an affidavit to which a police officer was willing to subscribe his name.
The length of the affidavit that supported the warrant is not an indication of substance. The minutia contained in the affidavit in this record is apparent. Simply put, the affidavit does not contain a single fact supporting the conclusion that the residence searched was the location of an "illicit drug operation." Neither of the informants reported being inside the residence, seeing the decedent purchase drugs from inside the residence, or seeing the decedent purchase drugs from anyone who resided in the residence. Neither of the informants stated that the decedent told them that he had purchased drugs from the residence or from anyone living in the residence. The affiant never witnessed a drug transaction in the residence or a drug *608 transaction involving anyone who resided there. Not one statement in the affidavit asserts that anyone saw drugs in the residence or on the person of anyone who lived in the residence.
The affidavit contains no factual assertions supporting the conclusion that the residence contained the objects sought: "Business records establishing an illicit drug operation, telephone books listing buyers and photo albums which would assist police in identifying additional conspirators." No informant reported seeing any of the objects or having been told that the objects were in the residence. The affiant states no facts supporting the officer's conclusion that the objects were in the residence.
Distilled to its essential core, the affidavit states that:
1. the decedent died of a drug overdose;
2. a friend of the decedent suspects the decedent purchased drugs at the residence on three prior occasions, none of which are identified by day, month, or year;
3. although the decedent's girlfriend "was not sure if [the decedent] obtained drugs, [she] did state that [decedent] was going to see a subject [at the residence] who [the girlfriend] believes was named Wayne;
4. The affiant checked the registration of a vehicle parked in the driveway of the residence and learned that it was registered to Glen Wayne Miles.
Incredibly, from these circumstances the officer concludes:
Based on the statements made to your affiant by both [the friend] and [the girlfriend] it is your affiant's experience that [Miles] has in the past distributed cocaine to [the decedent]. Further your affiant would assert that in his experience as a drug investigator it was common to find records detailing debts owed and balances for drug transactions. Additionally, it has been my experience that drug traffickers keep photographs of other drug traffickers and their telephone numbers. All of this paraphernalia is necessary for a trafficker to conduct business. It is for these reasons that your affiant firmly believes that [at the residence] there [are] now business records, telephone books and photographs which [would] assist police in establishing that a drug operation has been and is currently being run from [the residence].
The officer's conclusions are based solely upon the suspicions of the informants, not facts. This Court is not required to excuse the officer's mistake merely because the magistrate rubber stamped this plainly deficient application for a warrant.[2]Briggs, 475 U.S. at 346, n. 9, 106 S.Ct. at 1098, n. 9. "The pivotal question is whether `a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Roberts, 852 F.2d 671, 675 (2d Cir.), cert. denied, 488 U.S. 993, 109 S.Ct. 556, 102 L.Ed.2d 583 (1988). The answer is clearly, "yes." The length of the affidavit does not overshadow the meagerness of its substance. The affidavit was "`so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " Leon, 468 U.S. at 923, 104 S.Ct. at 3421. Furthermore, because the affidavit was "so conclusory with regard to its probable cause information as to render it a `bare bones' affidavit" it cannot be rehabilitated by the Leon exception. State v. Adkins, 346 S.E.2d 762, 775 (W.Va.1986). See also United States v. Barrington, 806 F.2d 529, 532 (5th Cir.1986); State v. Thompson, 369 N.W.2d 363, 372 (N.D.1985).
*609 Today's decision expands the holding in Leon beyond its reasonable reaches:
It makes all the difference in the world whether one recognizes the central fact about the Fourth Amendment, namely, that it was a safeguard against recurrence of abuses so deeply felt by the Colonies as to be one of the potent causes of the Revolution, or one thinks of it as merely a requirement for a piece of paper.
United States v. Rabinowitz, 339 U.S. 56, 69, 70 S.Ct. 430, 436, 94 L.Ed. 653 (1950) (Frankfurter, J., dissenting).
For the reasons I have stated, I would reverse the trial judge's refusal to suppress the fruits of the illegal search. Accordingly, I dissent.

UPON A PETITION FOR REHEARING EN BANC BEFORE THE FULL COURT
On September 24, 1991 came the appellant, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on September 10, 1991 and grant a rehearing en banc thereof.
On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on September 10, 1991 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.
The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellant shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.
NOTES
[1] No issue of state law is raised by appellant with respect to the good faith exception. Cf.State v. Carter, 322 N.C. 709, 370 S.E.2d 553 (1988).
[2] Furthermore, the warrant affidavit lacks the date when, according to the friend or the girlfriend, the decedent went to the residence. The officer, the magistrate, and this Court could not possibly have any basis to conclude whether the visits occurred five days or five years prior to the issuance of the warrant. In the absence of any dates relating to the supposed sales, the warrant was "so facially deficient ... that the executing officers [could not have] reasonably presume[d] it to be valid." Leon, 468 U.S. at 923, 104 S.Ct. at 3421.