COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Humphreys and Senior Judge Overton
Argued at Chesapeake, Virginia


NICKKINBA M. BRASWELL

MEMORANDUM OPINION* BY

v.    Record No. 1639-00-1        JUDGE NELSON T. OVERTON
                                  JUNE 12, 2001

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Dean W. Sword, Jr., Judge

Stephen B. Plott (Cannon, Collins & Plott,
PLC, on brief), for appellant.

Leah A. Darron, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Nickkinba M. Braswell appeals his conviction after a bench trial of two counts of robbery and two counts of use of a firearm in the commission of a robbery.  He argues that the trial court erred in (1) failing to suppress evidence as fruit of an illegal seizure, (2) failing to suppress his confession as involuntarily given, and (3) overruling his motion to strike the evidence.  For the reasons that follow, we disagree and affirm his convictions.

BACKGROUND

Viewed in the light most favorable to the Commonwealth, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

48 (1991), the evidence proved that around 8:30 p.m. on December 8, 1999, Officer Ian McNett received a radio dispatch that a woman matching the description of the "teen bandit" had been seen in a specified neighborhood. The "teen bandit" was a young woman wanted for committing several armed robberies. The dispatch indicated that the woman was seen in the company of a black male.

Shortly after receiving the dispatch, McNett saw a woman matching the description of the "teen bandit" walking in the named area with two black males, one of whom was Braswell. McNett exited his vehicle and approached the trio. He displayed his badge and asked to speak with them. Braswell and the young woman stopped, but the other man, Detore Brown, started edging away, with his hands in his pockets. McNett testified that, because the woman was a possible armed robbery suspect, he was concerned that Brown was concealing his hands. Brown refused several requests from McNett to show his hands, even after McNett and Officer Martin Deaver drew their weapons. McNett stated that Brown's failure to comply caused him to fear that Brown might be armed.

McNett ordered Braswell and the woman to the ground. Brown refused to show his hands until Braswell said, "Just do what they say." Brown then removed his hands from his pockets and got on the ground. Deaver conducted a pat-down search of Brown and recovered a black semiautomatic pistol from Brown's pocket. Braswell's command, and Brown's reaction, caused the officers to believe that Braswell and Brown were together and that Braswell

-

exerted a certain amount of control over Brown.  When other officers, who had been investigating recent robberies in the area, arrived at the scene they stated that Brown and Braswell matched the physical descriptions of two black males who had committed two recent grocery store robberies.  The officers handcuffed all three suspects and transported them to the police station in order to investigate their suspicions.

The officers contacted Detective D.S. Dempsey, who had been investigating the grocery store robberies.  Dempsey arrived at the station and recognized Braswell as one of the two men caught on videotape during one of the robberies.  Dempsey first interviewed Brown.  After Brown had been read and waived his Miranda rights, he gave a verbal and a written confession implicating himself and Braswell in the grocery store robberies.  Dempsey then interviewed Braswell, who also waived his Miranda rights, verbally and in writing.  He subsequently confessed to robbing the two grocery stores.

At trial, Virginia Smith identified Braswell as one of the two men who robbed her.  Smith testified that on the evening of December 2, 1999, she was working as a cashier at a grocery store when two men entered.  One of the men, who Smith identified as Brown, placed a candy bar on her counter as if to purchase the item.  When Smith opened the cash register, the man reached into the cash drawer and started grabbing money. Brown's companion, who Smith described as the taller of the two

-

and identified in court as Braswell, produced a shotgun, which he pointed at Smith.

Oneta McClellan testified that she was working as a cashier at a grocery store on the night of December 4, 1999, when a man approached her counter, pointed a handgun at her, and began taking cash from the drawer of her register. She stated that the robber had a male companion but she could not identify either man, except to say that they were black males.

Brown and Braswell are black males, and Dempsey testified that Braswell is taller than Brown.

I.

> In appropriate circumstances, an officer, lacking probable cause to arrest, may nevertheless approach a person he or she suspects of being engaged in criminal activity to investigate such activity. An officer may detain a person in a "Terry stop" if the officer possesses articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, is engaging in one, or is about to engage in one. In determining whether an officer had a particularized and objective basis for suspecting a person of criminal activity, a court must consider the totality of the circumstances.

Clarke v. Commonwealth, 32 Va. App. 286, 294-95, 527 S.E.2d 484, 488-89 (2000). McNett had received information that the "teen bandit" had just been seen in the area in the company of a black male. The "teen bandit" was suspected of committing several armed robberies and was wanted by the police. The woman matched the description of the "teen bandit," providing McNett with

-

reasonable suspicion to stop the group to investigate further. Because the "teen bandit" was known to be armed, McNett asked the trio to show their hands. Brown began edging away as soon as McNett approached. By refusing to display his hands, Brown caused McNett to suspect that he was armed and trying to conceal criminal activity. "[E]vasive behavior in the presence of the police is a pertinent factor in determining reasonable suspicion." Wallace v. Commonwealth, 32 Va. App. 497, 504, 528 S.E.2d 739, 742 (2000). When McNett drew his weapon and ordered everyone to the ground, Brown still refused to take his hands from his pockets. Not until Braswell commanded Brown to comply with the officer's request did Brown show his hands and get on the ground. The interaction between Brown and Braswell caused McNett to believe that the two men were associated with each other and that Braswell exerted authority over his companion. Additionally, other officers arrived at the scene and identified Brown and Braswell as matching the descriptions of two black males wanted for committing two recent armed robberies in the area.

"Although the authority to conduct a pat-down search does not follow automatically from the authority to effect an investigative stop, '[w]here the officer can "point to particular facts from which he reasonably inferred that the individual was armed and dangerous" [he is] justified in searching for weapons.'" Harris v. Commonwealth, 33 Va. App.

-

325, 334, 533 S.E.2d 18, 22 (2000) (citation omitted).  After Brown submitted to McNett's authority, the officers performed a pat-down search for weapons.  The search revealed that Brown was carrying a handgun in his coat pocket.

The officers then possessed probable cause to arrest Braswell.  "[P]robable cause is a flexible, common-sense standard."  Texas v. Brown, 460 U.S. 730, 742 (1983).  "[A]n investigating officer does not have to 'deal with hard certainties, but with probabilities,' and is permitted to make 'common-sense conclusions about human behavior' in assessing a situation."  Carson v. Commonwealth, 12 Va. App. 497, 502, 404 S.E.2d 919, 922 (citation omitted), aff'd on reh'g en banc, 13 Va. App. 280, 410 S.E.2d 412 (1991), aff'd, 244 Va. 293, 421 S.E.2d 415 (1992).  In determining the existence of probable cause, we look to the totality of the circumstances involved.  See Miles v. Commonwealth, 13 Va. App. 64, 68, 408 S.E.2d 602, 604 (1991), aff'd on reh'g en banc, 14 Va. App. 82, 414 S.E.2d 619 (1992).  Braswell was in the company of a suspected armed robber, he appeared to exert control over his armed companion, indicating that the two were working together, and the officers recognized Braswell and Brown as matching the descriptions of the perpetrators of two recent armed robberies.  Given the totality of the circumstances, combined with the officers' reasonable suspicions, McNett possessed probable cause to detain

-

Braswell.  Accordingly, the trial court did not err in denying Braswell's motion to suppress.

                              II.

   Braswell argues that the trial court should have suppressed his confession as involuntary because he was unlawfully detained and because the police exerted undue pressure upon him.  After the officers transported Braswell and Brown to the station, Dempsey first interviewed Brown and secured a confession to the two robberies.  Dempsey then met with Braswell.  Dempsey read him his <u>Miranda</u> rights from a preprinted form which Braswell signed, acknowledging that he understood them.  Dempsey then asked appellant if he would speak to him.  Appellant agreed and approximately forty minutes later signed two written confessions.

   "In order for a confession given during a custodial interrogation to be admissible at trial, the Commonwealth must show that the accused was apprised of his right to remain silent and that he knowingly, intelligently, and voluntarily elected to waive that right." <u>Roberts v. Commonwealth</u>, 18 Va. App. 554, 557, 445 S.E.2d 709, 711 (1994).  As stated above, Braswell was legally detained at the time of his questioning.  Dempsey explained to Braswell his constitutional rights.  Braswell acknowledged that he understood his rights and he voluntarily waived them.  After speaking with Dempsey for less than an hour, Braswell confessed to robbing the grocery stores with Brown.

                              -

The record does not reflect any untoward behavior on the part of

the police officers or that Braswell was not acting of his own

free will.  The trial court did not err by refusing to suppress

Braswell's confession.

### III.

Finally, Braswell argues that the evidence adduced at trial

was insufficient to prove beyond a reasonable doubt that he was

guilty of armed robbery.  In a signed statement he provided to

the police, appellant admitted robbing the two grocery stores

with Brown.

> In Virginia an extrajudicial confession of
> an accused that he committed the offense
> with which he is charged is not, alone and
> uncorroborated, adequate proof of the corpus
> delicti.  "The purpose of the corroboration
> rule is to reduce the possibility of
> punishing a person for a crime which was
> never, in fact, committed."

Jefferson v. Commonwealth, 6 Va. App. 421, 424, 369 S.E.2d 212,

214 (1988) (citations omitted).  But "[w]here 'the commission of

the crime has been fully confessed by the accused, only slight

corroborative evidence is necessary to establish the corpus

delicti.'"  Id. (citation omitted).

Appellant admitted committing the December 2 and December 4

robberies, and admitted that these robberies were committed at

gunpoint.  The victims' testimony sufficiently corroborated

appellant's confession.  The Commonwealth's evidence was

competent, was not inherently incredible, and was sufficient to

-

prove beyond a reasonable doubt that appellant was guilty of robbery and use of a firearm in the commission of a robbery. Accordingly, the decision of the circuit court is affirmed.

<u>Affirmed.</u>