COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Huff, Athey and Friedman
Argued by videoconference


CHARITY ELIZABETH BEVERLY

                                                          MEMORANDUM OPINION*
v.        Record No. 0725-21-3                       JUDGE FRANK K. FRIEDMAN
                                                              APRIL 12, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Christopher B. Russell, Judge

Tyler M. Jerrell, Assistant Public Defender, for appellant.

Leanna C. Minix, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.


Charity Elizabeth Beverly ("Ms. Beverly") appeals the circuit court's denial of her motion to

suppress evidence. She also appeals the sufficiency of the evidence supporting her conviction under

Code § 18.2-250. We conclude that the warrant authorizing the search of Ms. Beverly's home was

defective and the "protective sweep" initiated by the officers prior to obtaining the warrant was

improper. However, upon reviewing the record and briefs of the parties, we determine that we are

required to affirm the circuit court's denial of Ms. Beverly's motion to suppress. We also find that

the evidence was sufficient to support her conviction.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

BACKGROUND

We review the facts in the light most favorable to the prevailing party below. *Long v. Commonwealth*, 72 Va. App. 700, 705 (2021); *Bryant v. Commonwealth*, 72 Va. App. 179, 182 (2020).

<u>Detectives Improperly Enter Ms. Beverly's House Without a Warrant</u>

Detective Buzzard received information that a wanted person, Paul Price, was located at a house in Buena Vista. Mr. Price was known by police officers for his methamphetamine use and distribution. Five officers arrived at the house. Detective Buzzard, Deputy Wade, and Sergeant Sorrells went to the back door of the home and knocked, at which point another individual, Jose Colazo, opened the back door. Detective Buzzard spoke with Mr. Colazo in the doorway about why the officers were there, and testified that "while speaking to [Mr. Colazo,] there was a strong odor of burnt marijuana coming from his person." Detective Buzzard asked Mr. Colazo to come out onto the porch. Mr. Colazo complied without incident. Mr. Colazo was detained.

Detective Buzzard then yelled into the house for Mr. Price to come out. Mr. Price yelled that he was coming out, and he then exited through the back door to meet the detective. He was put into "custody after he exited the residence." Detective Buzzard advised Mr. Colazo that the officers would be obtaining a search warrant because of the "odor of marijuana."

Detective Buzzard was the only officer to testify for the Commonwealth regarding the events surrounding the search. Detective Buzzard repeatedly testified that the odor of marijuana he smelled came from Mr. Colazo's person, rather than from inside the home. Detective Buzzard stated on five separate occasions that the scent of burnt marijuana came from Mr. Colazo's person. At no time did the Commonwealth's only witness from the scene of the search, Detective Buzzard, state that he smelled marijuana emanating from the residence itself.

At this point, there were at least five officers on the scene. Mr. Price had been apprehended, and both he and Mr. Colazo were cooperating:

> Q:     Detective Buzzard, when you took Mr. Price into custody, he didn't give you any pushback? He just came on out.
>
> A:     Yes sir.
>
> Q:     And same with Mr. Colazo?
>
> A:     Yes sir.
>
> Q:     And you smelled marijuana coming from Mr. Colazo's person?
>
> A:     Yes.

Three officers, including Detective Buzzard, then entered the home to perform what Detective Buzzard called a "protective sweep" of the house, explaining the officers were checking to make sure there were not more people in the residence before two of the five officers left the scene to obtain a search warrant.[2]

Detective Buzzard, Deputy Wade and Sergeant Sorrells were the officers who entered the home to perform the "protective sweep." Detective Buzzard announced himself and asked anyone there to come out. As they went through the kitchen, Detective Buzzard observed the appellant, Ms. Beverly, coming down the stairs from her home's second floor. When she reached the ground level, Detective Buzzard smelled the strong odor of burnt marijuana on her person. She was then detained, though not yet arrested, and held outside the residence.

After about thirty minutes of keeping Ms. Beverly outside, the warrant was obtained. Detective Buzzard stated that he apprised Detective Smith of the basis for the affidavit seeking a warrant.

---

[2] Detective Buzzard later stated he could not remember exactly when the two officers—Detective Smith and Investigator Flint—left to seek the warrant. He ultimately concluded that, to the best of his recollection, they left before the sweep was completed.

> Q:     Deputy Buzzard, you advised Detective Smith of what, of
>        the smell that supported the affidavit, correct?
>
> A:     Yes sir.
>
> Q:     And you smelled marijuana coming from Mr. Colazo's
>        person?
>
> A:     Yes sir.

Detective Buzzard also indicated that he believed that Smith had left to get the warrant before the sweep was completed.

The Affidavit Underlying the Warrant

The affidavit for the search warrant stated:

1. A search is requested in relation to an offense substantially described as follows:

   § 18.2-250.1. Possession of marijuana.

2. The place, person, or thing to be searched is described as follows:  The known residence of Charity Beverly located at . . . Mechanics Circle; Buena Vista, VA. 24415.  The residence is a white 2 story with a grey shingle roof.  A sign posted on the carport displays the residential address listed above.

3. The things or persons to be searched for are described as follows:  Marijuana, smoking devices, paperwork showing residency.

4. The material facts constituting probable cause that the search should be made are:  On 11/06/2019, this affiant responded to the residence listed in paragraph 2 of this affidavit in an attempt to serve an outstanding criminal warrant on Paul William Price.  Upon service of the outstanding warrants, Detective Buzzard detected a strong odor of MARIJUANA coming from within the residence.

5. The object, thing or person searched for constitutes evidence of the commission of such offense.

6. I was advised of the facts set forth in this affidavit, in whole or in part, by one or more other person(s). The credibility of the person(s) providing this information to me and/or the reliability of this information provided may be determined from the following facts: Detective Buzzard is a duly sworn officer with the Buena Vista Police Department and is familiar with the smell of MARIJUANA through his training and experience. Detective Buzzard is currently assigned to the Virginia State Police Drug Task Force.

Ms. Beverly contends the affidavit relies on information obtained during the "protective sweep" including her name and residence, as well as reference to alleged odors emanating from "within" the house.

<u>After Obtaining the Warrant, Officers Re-Enter the Home and Their Search Reveals Drugs and Drug Paraphernalia</u>

After obtaining the warrant, Detective Buzzard, Detective Smith, and Investigator Flint searched the home. In the first bedroom they searched, they discovered a marijuana cigarette and a syringe. In the second bedroom, they found a glass smoking device under the bed, a glass smoking device in a black eyeglasses case on top of a dresser, and a clear baggie of a crystal-like substance (later confirmed to be methamphetamine) sitting on top of a space heater, in plain view. In the same room, they observed court papers, bills, and envelopes with Ms. Beverly's name on them. In the basement they found a glass smoking device and a plastic container with a clear plastic baggie holding three pills. They then put Ms. Beverly and Mr. Colazo under arrest.

<u>The Motion to Suppress and the Circuit Court's Ruling</u>

Ms. Beverly moved to suppress the evidence obtained, arguing that the initial search associated with the "protective sweep" was illegal and the incriminating evidence was discovered because of the illegal search. The parties presented the issue of suppression before the circuit court; the only witness from the scene to testify was Detective Buzzard.

The circuit court ruled that the search warrant was defective and explained that the affidavit the officers used to obtain the warrant stated the smell of marijuana was coming from the home (rather than from the person of Mr. Colazo or Ms. Beverly) which was contrary to the evidence presented. In deciding the warrant was defective the circuit court also questioned how the officers knew Ms. Beverly's name before putting it on the affidavit, and how or when the officers learned she owned the residence.

The circuit court also found that there were no exigent circumstances permitting a protective sweep. However, the court still found that exclusion of the evidence was not required because the officers had a right to act in "good faith" in objectively reasonable reliance on the warrant. The court concluded that "when a judicial officer, in this case a magistrate, issues a warrant, police are entitled to rely on it" unless the factors set out in *United States v. Leon*, 468 U.S. 897 (1984), and *McCary v. Commonwealth*, 228 Va. 219 (1984), are met. The court made specific findings that these factors were not met in this case.

Of particular relevance, the court made the findings that the magistrate was not intentionally misled by information the affiant knew or should have known was false, and it further concluded that the affiant did not exhibit reckless disregard for the truth. The court further found that the misunderstanding as to whether the odor of marijuana came from Mr. Colazo's person or emanated from the residence was explained by the fact that Mr. Colazo was in the doorway of the home when police encountered him. Thus, the court found the information in the affidavit derived from the initial contact with Mr. Colazo—not the subsequent "sweep." The court concluded: "notwithstanding a defective search warrant" the evidence found by police in their search should not be excluded.

Ms. Beverly appealed, arguing that the evidence used in convicting her should have been suppressed. She argues that even if the evidence is admissible, it is insufficient to support her conviction.

The Commonwealth argues 1) exigent circumstances permitted the warrantless search, 2) the good faith exception applies to make the warrant reliable, or 3) the evidence is admissible through the independent source doctrine. It also argues that the evidence was sufficient to support a conviction.

ANALYSIS

I. Standard of Review

"An appellant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact on appeal." *Taylor v. Commonwealth*, 66 Va. App. 619, 631 (2016) (citing *King v. Commonwealth*, 49 Va. App. 717, 721 (2007)). "The determination of whether police may make a warrantless search or seizure involves issues of both law and fact, which we review de novo on appeal." *Copeland v. Commonwealth*, 42 Va. App. 424, 433 (2004) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *Whitfield v. Commonwealth*, 265 Va. 358, 361 (2003)). An appellate court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and . . . give[s] due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *McGee v. Commonwealth*, 25 Va. App. 193, 197 (1997) (*en banc*) (citation omitted). We review *de novo* the application of law to those facts. *Carlson v. Commonwealth*, 69 Va. App. 749, 758 (2019) (citing *Murphy v. Commonwealth*, 264 Va. 568, 573 (2002)); *Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021) (explaining this Court must review "*de novo* the overarching question of whether a search or seizure violated the Fourth Amendment").

Ms. Beverly has the burden to show that the denial of her suppression motion was reversible error.  *Carlson*, 69 Va. App. at 758 (citing *Commonwealth v. Robertson*, 275 Va. 559, 564 (2008)).  In determining whether to affirm the denial of a suppression motion, the appellate court considers evidence presented both at the suppression hearing and at trial.  *Hill v. Commonwealth*, 297 Va. 804, 808 (2019).

<u>The Denial of Ms. Beverly's Motion to Suppress Must Be Affirmed</u>

A.  <u>The Fourth Amendment Requires Police to Obtain a Warrant to Conduct a Home Search—The Warrant Here was Defective</u>

The Fourth Amendment to the United States Constitution requires "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  Thus, the Fourth Amendment prohibits unreasonable searches and seizures.  *Kyer v. Commonwealth*, 45 Va. App. 473, 480 (2005) (*en banc*).  "Among the many interests served by the Fourth Amendment, the privacy interest in one's home has few equals."  *White v. Commonwealth*, 73 Va. App. 535, 552 (2021) (quoting *Kyer*, 45 Va. App. at 480).  Typically, "[w]hen government agents conduct a search or seizure within protected areas of a dwelling without a warrant such actions are presumptively unreasonable."  *Robinson v. Commonwealth*, 273 Va. 26, 34 (2007) (citing *Payton v. New York*, 445 U.S. 573, 586-87 (1980)).  As the United States Supreme Court has recognized, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed[,]" *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (quoting *United States v. U.S. District Court*, 407 U.S. 297, 313 (1972)), because "[a]t the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable

- 8 -

governmental intrusion[,]" *Kyer*, 45 Va. App. at 480 (quoting *Kyllo v. United States*, 533 U.S. 27, 31 (2001)).

If a search is conducted in violation of the Fourth Amendment, evidence found as a result of the illegal search is subject to the exclusionary rule, which prohibits the introduction of evidence, tangible or testimonial, acquired during an unlawful search. *Carlson*, 69 Va. App. at 758 (citing *Murray v. United States*, 487 U.S. 533, 536 (1988)). The exclusionary rule provides that "derivative evidence . . . that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search" must be excluded from consideration. *Id.* at 759. The "prohibition of derivative evidence is the essence of the 'fruit of the poisonous tree' doctrine." *Id.* (citing *Commonwealth v. Ealy*, 12 Va. App. 744, 754 (1991)).

The circuit court found that the warrant was defective in this case because it misstated the source of the marijuana odor. Detective Buzzard stated that the scent came from Mr. Colazo— but the affidavit underlying the warrant stated that the odor emanated from within the residence (and the information was attributed to Detective Buzzard.) This inaccuracy clearly benefitted the prosecution with respect to probable cause. The circuit court also was troubled by the fact that the affidavit included reference to Ms. Beverly and the fact that it was her residence: these latter facts were learned as a result of the "protective sweep," but did not relate to probable cause.[3]

We uphold the circuit court's assessment that the warrant was defective. Moreover, the error was not insignificant as the magistrate was not given the opportunity to determine whether an odor emanating from Mr. Colazo's person created probable cause for police to search Ms. Beverly's house. Thus, the search which recovered the evidence against Ms. Beverly was based upon a defective warrant. The Commonwealth, however, argues that there are

---

[3] While the circuit court found the warrant to be defective, it attributed the error to imprecise police work or a reasonable misunderstanding rather than to intentional misconduct or a reckless disregard for the truth, as will be discussed *infra*.

circumstances in which information discovered during a warrantless search is protected from exclusion.[4] This includes situations where information is discovered when a warrantless search is performed under "exigent circumstances," with probable cause. *Robinson*, 273 Va. at 34 (citing *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002)).

> B. The Circuit Court Correctly Determined There Were No Exigent Circumstances Justifying a Protective Sweep

> 1. The Exigent Circumstances Exception

"One well-recognized exception applies when 'the exigencies of the situation' make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Ross v. Commonwealth*, 61 Va. App. 752, 759 (2013) (quoting *Washington v. Commonwealth*, 60 Va. App. 427, 436 (2012)). "Such exigencies often arise . . . where the police have probable cause to enter or search a location or thing, but exigent circumstances excuse the need to obtain a warrant . . . ." *Id*. at 760. Accordingly, "[t]he exigent circumstances exception allows a warrantless search when an emergency leaves police insufficient time to seek a warrant." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2173 (2016). Since warrantless searches of the home are presumptively unreasonable, the burden rests with the government to prove exigent circumstances. *Commonwealth v. Campbell*, 294 Va. 486, 495 (2017).

The Commonwealth contends that the original warrantless entry into Ms. Beverly's home was justified under the "exigent circumstances" exception. The Supreme Court of Virginia has explained "[n]o court could provide an exhaustive enumeration of factors that would distinguish circumstances that qualify as exigent from those that would not." *Evans v. Commonwealth*, 290

---

[4] "Good faith" is not an exception that allows the Commonwealth to rely on evidence that was obtained prior to the execution of any warrant; good faith applies where a warrant is obtained and, though it is defective, it is relied on in good faith by the police officer who conducted the search. *Derr v. Commonwealth*, 242 Va. 413, 422 (1991).

Va. 277, 283 (2015). The Court, nonetheless, has provided a list of relevant factors for consideration in such circumstances:

> (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

*Verez v. Commonwealth*, 230 Va. 405, 410-11 (1985). Suffice it to say, the *Verez* factors do not support the Commonwealth's claims of exigent circumstances here.

### 2. There Were No Exigent Circumstances Justifying a Warrantless Search Here

In the circuit court, the Commonwealth's argument to establish exigent circumstances boiled down to the need to protect against a possible danger in the house. "Exigent circumstances" include situations "where officers arrest an individual in her home and there are 'articulable facts' that provide a reason for the officer to believe 'that the area to be swept harbors an individual posing a danger to those on the scene.'" *Commonwealth v. Robertson*, 275 Va. 559, 564 (2008) ("The Fourth Amendment permits the police to conduct a limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief, based on specific and articulable facts, that the area to be swept harbors an individual posing a danger to those on the arrest scene."). Here, however, there was no indication that the area posed a danger to those on the arrest scene. Mr. Colazo and Mr. Price came out when asked. There was no reason to suspect there were other people in the house that were going to cause danger—Detective Buzzard even explained that he entered the home to see *if* there were

- 11 -

additional people inside. Detective Buzzard suggested that a sweep was needed because two officers were leaving to go get a warrant, but there were five officers on the scene, and both Mr. Colazo and Mr. Price were detained and cooperative at this point.

There were no articulable facts offered to explain why the officers had reason to believe there were persons in the house who posed a danger. The circuit court found that a "protective sweep" was not necessary in this case, and we agree with that finding.

On appeal, the Commonwealth introduces an argument that other exigent circumstances justified the warrantless search—the imminent destruction of marijuana.[5] The Supreme Court of Virginia has found that the potential for removal of evidence of criminal activity may establish exigent circumstances—particularly in drug cases. However, such exigent circumstances, again, were not established in the present case.

The Supreme Court of Virginia dealt with this issue in *Evans*. In *Evans*, officers on patrol noticed the smell of marijuana emanating from a nearby apartment window. 290 Va. at 280. After a person in the apartment opened and slammed the door on the officers, a "gust of wind" carried the smell of marijuana from inside the apartment. *Id*. at 281. The officers knocked again and heard movement inside the apartment. *Id*. The door was answered again, at which point the officers insisted they come in and investigate; they found a marijuana blunt and residue. *Id*. The Supreme Court analyzed the circumstances, explaining "police officers find themselves in a myriad of situations with varied fact patterns," and chose to analyze it from a "practical, commonsense" perspective. *Id*. at 283. It found that the cloud of "heavy and extremely strong marijuana odors" and contemporaneous knowledge of the person in the apartment that the police were at the doorway would naturally give her incentive to destroy or

---

[5] The Commonwealth raises this issue in the context of a "right for the wrong reason" argument. *See Perry v. Commonwealth*, 280 Va. 572, 579 (2010).

otherwise conceal the illegal drugs after the door was closed. *Id.* at 285. The Court cited two cases from the Fourth Circuit in coming to its conclusion—*United States v. Cephas*, 254 F.3d 488, 496 (4th Cir. 2001), and *United States v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991); these are both cases in which evidence was produced suggesting drug evidence would be destroyed without swift police action.

In the present case, unlike *Cephas* and *Grissett*, the Commonwealth did not establish that the officers had an objectively reasonable belief that drugs were going to be disposed of by anyone inside the home—or even that anyone else was present in the residence. The officers are not given the benefit of hindsight in knowing that Ms. Beverly was in the house or that drugs were in the house—the inquiry is whether "a warrantless search [is] reasonable under the Fourth Amendment . . . based on the information available to the officers at the time of entry and cannot be supported by facts learned afterwards." *White*, 73 Va. App. at 559 (finding that exigent circumstances did not exist because officers had "no reasonable belief that contraband was about to be removed or destroyed [and had] no knowledge or information at the time of entry even to suggest that contraband was present").

The testimony from Detective Buzzard indicated the officers entered the home to check *whether* additional people were inside the home. There was no testimony suggesting the officers reasonably believed anyone was inside with the capability of destroying evidence or the inclination to do so. The circuit court correctly determined that the Commonwealth did not establish exigent circumstances. Thus, the initial entry into Ms. Beverly's home was unlawful.

C. The Circuit Court's Finding that the Good Faith Exception Applies Here Must be Upheld

After finding the warrant defective, the circuit court determined that the "good faith" exception trumped the exclusionary rule, thereby allowing the evidence from the search to be considered at trial. The "good faith" exception allows for admission of evidence that would

- 13 -

otherwise be excluded in situations where a defective warrant has been issued and is relied on in "good faith" by the officers in their search for evidence. In other words, the evidence need not be excluded when "a police officer, acting in objective good faith, obtains a search warrant from a magistrate judge and conducts a search within the scope of the warrant," even if the warrant is subsequently determined to be defective for Fourth Amendment purposes. *Derr v. Commonwealth*, 242 Va. 413, 422 (1991). However, the good faith exception to the exclusionary rule will not apply where:

> (1)[T]he magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable or (4) . . . the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.

*Miles v. Commonwealth*, 13 Va. App. 64, 71 (1991) (quoting *Atkins v. Commonwealth*, 9 Va. App. 462, 464 (1990)), aff'd on reh'g en banc, 14 Va. App. 82, (1992)). The circuit court factually determined that none of these factors were established. Under the circumstances, we are constrained to uphold the circuit court's ruling.

Ms. Beverly takes issue with the circuit court's "good faith" ruling—but she challenges it by relying on a factual narrative that was rejected by the circuit court. She argues that since the underlying affidavit states that the smell of marijuana emanated from "within the residence" the unlawful "protective sweep" had to be the source of the key information leading to the granting of the warrant. Thus, she asserts all evidence discovered in association with this initial illegal sweep must be excluded.[6]

---

[6] Ms. Beverly's opening brief at page 7 specifically states that Ms. Beverly "is not challenging the veracity of the facts presented to the magistrate" but challenges that the "facts were obtained by a warrantless search of her residence."

The problem with this theory is that it does not link up with the circuit court's ruling—or with the evidence in the case when it is viewed in best light for the Commonwealth. For example, Detective Buzzard consistently stated that the smell of marijuana came from Mr. Colazo's person (not the residence). Most importantly—as far as the fact-finder was concerned–Detective Buzzard testified that he smelled the odor on Mr. Colazo as Mr. Colazo stood in an open doorway while exiting the house. The circuit court, during argument on the suppression motion, stated to the defense: "I understand your argument but it . . . doesn't properly characterize the evidence presented today." The court observed that when Mr. Colazo came to the door, he smelled like marijuana, and the court further reasoned: "So that's the marijuana coming from a person and coming from the house where the person was just seconds ago, a split second, a half second ago, inside that house. That's what goes on the affidavit. That's all that goes on the affidavit."

Thus, the fact-finder determined that Detective Buzzard's account of events was "not exactly" what was put in the affidavit by Detective Smith, the affiant, but that a "half second" question of semantics explained the inconsistency. The court further ruled the misunderstanding or error did not evidence intentional or reckless conduct. Thus, the court concluded that the police could, in good faith, rely upon the warrant. The court stated:

> [P]olice are entitled to rely on [a search warrant] unless . . . it's so lacking in indicia of probable cause as to render [the] official [to] believe in it[]s existence [is] entirely unreasonable. Or if the magistrate was misled by information that the affiant knew was false. We don't have any evidence of that here. Or would have known was false except for his reckless disregard of the truth and I find that we don't have that here either. So for those reasons, the Court's going to rule that notwithstanding a defective search warrant . . . evidence obtained from the warrant itself . . . will not be excluded.

The findings that the magistrate was not misled by information the affiant knew or should have known was false—and that there was no reckless disregard of the truth—are not challenged on appeal.  (*See* fn. 5, *supra*.)[7]

Despite Ms. Beverly's insistence that the scent of marijuana underlying the warrant must have come from the improper protective sweep, we are bound by the record before us. Ms. Beverly's theory is not consistent with the circuit court's conclusion that a misunderstanding occurred based on events prior to the sweep.  *See Martin v. Lahti*, 295 Va. 77, 88-89 (2018) (finding an appellant cannot prevail when their argument does not address the findings or rulings of the trial court).  Further, when the evidence is viewed in best light to the Commonwealth, as it must be, the affiant left to get the warrant before the sweep and Detective Buzzard consistently testified that the scent of marijuana came from persons (rather than the residence).  The circuit court's finding of a misunderstanding that pre-dated the sweep (and did not emanate from the sweep) is supported by the record—and Ms. Beverly "is not challenging the veracity of the facts presented to the magistrate."  Accordingly, we must uphold the circuit court's application of the "good faith" exception.[8]  We affirm the circuit court's ruling even as we note reservations regarding several of the actions (the unnecessary "protective sweep" and the statements on the defective warrant) taken by the officers as they undertook this search.

## II.  The Evidence is Sufficient to Support a Conviction Under Code § 18.2-250

"When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it."

---

[7] Ms. Beverly also points out that the officers would not have known her name or that the residence belonged to her absent the unlawful protective sweep.  This information, however, did not go to probable cause under the warrant.

[8] This conclusion renders moot the Commonwealth's reliance on the independent source rule.

*Carlson*, 69 Va. App. at 766 (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)). We must "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Clarke v. Commonwealth*, 32 Va. App. 286, 298 (2000) (quoting *Ramos v. Commonwealth*, 30 Va. App. 365, 368 (1999)).

A conviction under Code § 18.2-250 requires a showing that the possessor knowingly or intentionally possessed a controlled substance. Possession can be constructive, but "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the [item] and that it was subject to his dominion and control." *Clarke*, 32 Va. App. at 305 (quoting *Hancock v. Commonwealth*, 21 Va. App. 466, 469 (1995)); *Woodfin v. Commonwealth*, 218 Va. 458, 460 (1977).

Viewed in the light most favorable to the Commonwealth, the evidence established that Ms. Beverly was aware of the presence and character of the methamphetamine, which was subject to her dominion and control. For example, in the second bedroom, officers located a "glass smoking device" under the bed and a "clear plastic baggie of crystal-like substance" "sitting right on top" of a space heater, in plain view. Based on his training and experience, Detective Buzzard thought the bag contained crystal methamphetamine, for which the substance field tested positive. Also in the second bedroom, Detective Buzzard observed "court papers with Ms. Beverly's name on them" and "white envelopes with her name" on them. He also recovered a "black eyeglass case containing a glass smoking device with residue" on top of a dresser in the second bedroom.

While not conclusive, a "person's ownership or occupancy of premises on which the subject item is found" is a "probative factor[] to be considered in determining whether the totality of the circumstances supports a finding of possession." *Hall v. Commonwealth*, 69

- 17 -

Va. App. 437, 450 (2018); *see Lane v. Commonwealth*, 223 Va. 713, 716 (1982) (finding

relevant the defendant's proximity to the drugs along with her "occupancy of the premises");

*Archer v. Commonwealth*, 26 Va. App. 1, 12 (1997) (stating that "proximity to the contraband"

and "occupancy of the premises" provide probative evidence of constructive possession).

The circuit court's conclusion that Ms. Beverly possessed the drugs is supported by the

facts and circumstances surrounding their discovery, including the numerous objects found, and

hidden, around the home to enable drug use, and the reasonable inferences that necessarily

follow. The evidence presented by the Commonwealth was sufficient to support her conviction.

CONCLUSION

For the foregoing reasons, we affirm the ruling of the circuit court.

*Affirmed.*