COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Willis and Annunziata
Argued at Chesapeake, Virginia


JAMAR DUANE CLARKE

                                              OPINION BY
v.    Record No. 0425-99-1          JUDGE ROSEMARIE ANNUNZIATA
                                            APRIL 25, 2000
COMMONWEALTH OF VIRGINIA AND
 CITY OF HAMPTON


              FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                      Christopher W. Hutton, Judge

              Charles E. Haden for appellant.

              Michael T. Judge, Assistant Attorney General
              (Mark L. Earley, Attorney General, on brief),
              for appellees.


    The appellant, Jamar Duane Clarke, contends:  1) the trial

court erred in denying his motions to suppress evidence

concerning three distinct incidents; and 2) the trial court

erred in finding the evidence sufficient to convict Clarke of

the charged offenses arising from the March 12, 1998 and April

30, 1998 incidents.  We find that the trial court correctly

denied Clarke's motions to suppress, and we find the evidence

sufficient to support his convictions.  Accordingly, we affirm

the decision of the trial court.

INCIDENT OF SEPTEMBER 6, 1997

Facts

On September 6, 1997, at approximately 12:30 a.m., Officer Christopher McIntire of the Hampton City Police encountered Clarke while Officer McIntire was investigating loud music being played in violation of a city ordinance. Officer McIntire, who was on uniformed bicycle patrol, determined the source of the music to be a van parked in the yard of a house located at the intersection of Lombard Street and Shell Road. He observed three men and one woman standing near the vehicle. When Officer McIntire approached the intersection, the four individuals near the van saw him and immediately separated and began to walk away. One of the van's doors stood ajar. When Officer McIntire approached it, he observed that the keys remained inside. The music emanated from the van's radio. McIntire and other officers on patrol with him decided to question the four individuals in regard to the loud music and in order to determine whether the van might be stolen. McIntire cited as grounds for reasonable suspicion on the latter point the careless manner in which the four persons abandoned the vehicle.

McIntire intercepted Clarke before Clarke was able to leave the immediate vicinity of the van. McIntire identified himself as a police officer and asked to speak to Clarke. McIntire detected the odor of alcohol on Clarke's breath and person. He

also noticed that Clarke's eyes were bloodshot and observed that Clarke's voice rose and dropped in pitch and volume, leading him to believe Clarke was intoxicated. When McIntire asked Clarke to identify himself, Clarke gave a false name and refused to provide an address. McIntire decided to place Clarke under arrest for public drunkenness. When he reached for Clarke's left arm to place a handcuff on it, Clarke began to yell loudly and to physically resist the arrest. Sergeant Lewis, also of the Hampton City Police, was on patrol with Officer McIntire. When Lewis saw Clarke resisting arrest, he dismounted his bicycle and came to McIntire's assistance. Together the two officers subdued Clarke and placed him in handcuffs.

Upon cuffing Clarke, the officers searched Clarke incident to arrest to check for weapons. They discovered a handgun secreted in Clarke's clothing. Clarke again became disorderly, and the officers ultimately decided to place him in leg restraints, called "kick stops," to prevent Clarke from attempting to kick windows out of the patrol car in which he was placed.

Based on the above-stated course of events, Clarke was charged with carrying a concealed weapon, second or subsequent offense, and with resisting arrest. He was convicted of both charges in a bench trial on November 12, 1998.

## Analysis

In appealing a denial of a motion to suppress evidence deriving from an illegal search without a warrant, an appellant must prove that the warrantless search violated his or her Fourth Amendment rights. See Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980). Generally, an officer may make a warrantless arrest if he or she has probable cause to believe that the arrestee has committed a crime. See Thompson v. Commonwealth, 10 Va. App. 117, 121, 390 S.E.2d 198, 201 (1990) (citing United States v. Watson, 423 U.S. 411, 423 (1976)). An officer may search the arrestee incident to such lawful arrest. See DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 543 (1987) (citing Illinois v. Lafayette, 462 U.S. 640, 646 (1983)). If the officer lacked probable cause to arrest, however, any evidence seized pursuant to the arrest will be excluded from trial. See Lugar v. Commonwealth, 214 Va. 609, 611, 202 S.E.2d 894, 897 (1974).

In appropriate circumstances, an officer, lacking probable cause to arrest, may nevertheless approach a person he or she suspects of being engaged in criminal activity to investigate such activity. See Baldwin v. Commonwealth, 243 Va. 191, 195, 413 S.E.2d 645, 647 (1992) (citing Terry v. Ohio, 392 U.S. 1 (1968)). An officer may detain a person in a "Terry stop" if

- 4 -

the officer possesses articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, is engaging in one, or is about to engage in one. See Terry, 392 U.S. at 22. In determining whether an officer had a particularized and objective basis for suspecting a person of criminal activity, a court must consider the totality of the circumstances. See United States v. Cortez, 449 U.S. 411, 417-18 (1981); Ewell v. Commonwealth, 254 Va. 214, 217, 491 S.E.2d 721, 722-23 (1997). The test for reasonable suspicion under Terry is less stringent than the test for probable cause. Reasonable suspicion can be established with information different in quantity or content than that required to establish probable cause. Reasonable suspicion differs from probable cause "also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." Washington v. Commonwealth, 29 Va. App. 5, 12, 509 S.E.2d 512, 515 (1999) (quoting Alabama v. White, 496 U.S. 325, 330 (1990)).

The subjective intent of a police officer in making a stop is irrelevant. If the officer had probable cause to arrest or reasonable suspicion to conduct a Terry stop, evidence of criminal activity arising from the detention may be admitted against the defendant. See Glasco v. Commonwealth, 257 Va. 433,

448, 513 S.E.2d 137, 146 (1999) (citing <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996)).

Officer McIntire testified that he heard loud music before he observed Clarke and others standing near the van. Because the Hampton ordinance makes the playing of loud music after 10:00 p.m. a misdemeanor offense, McIntire had reasonable suspicion, if not probable cause, to believe that a crime was being committed and that the four persons near the van were involved. At a minimum, McIntire had lawful grounds to detain[1] Clarke briefly while McIntire investigated the incident involving the van. In the course of questioning Clarke concerning the music and the van, McIntire detected the odor of alcohol on Clarke, observed his bloodshot eyes, and noted his erratic speech. These observations provided probable cause to arrest Clarke for public drunkenness. During the struggle with Clarke to subdue him, McIntire and another officer found a concealed weapon secreted on Clarke's person. Because "incriminating property lawfully seized during [a] warrantless search incident to arrest may be introduced in evidence," <u>Commonwealth v. Brunson</u>, 248 Va. 347, 357, 448 S.E.2d 393, 399 (1994), we find no error and affirm Clarke's concealed weapon conviction arising from the September 6, 1997 arrest. As Clarke

---

[1] We assume, without deciding, that McIntire's initial contact with Clarke constituted a <u>Terry</u> stop.

physically resisted a lawful arrest, we likewise affirm his conviction on that charge.

INCIDENT OF MARCH 12, 1998

Facts

At approximately 3:00 a.m. on March 12, 1998, Officer Richard Sypher of the Hampton police was patrolling Shell Road in the City of Hampton. He observed three persons standing in the middle of the roadway, partly obscured by the shadow from a tree. Although he testified that these persons were not impeding traffic, Officer Sypher decided to investigate. When he turned his patrol car around and approached the persons, they separated. One of them, Clarke, got into a red two-door coupe bearing temporary license tags. Officer Sypher testified that, as he pulled up behind the vehicle, he thought the tags listed "March 10, 1998" as their expiration date. Because that date indicated they had expired, Sypher activated his emergency lights and ordered the vehicle to stop. Clarke complied with Officer Sypher's signal and stopped his car.

Officer Sypher parked his patrol car. As Sypher was rummaging for his flashlight, Clarke debarked his vehicle, turned, and faced Sypher's patrol car. As Sypher was about to speak to him, Clarke turned again and fled on foot. Sypher chased him some distance through a maze of residential privacy fences in an area bounded by Powhatan Parkway and Teach Street.

- 7 -

As Sypher chased Clarke across Powhatan Parkway, he observed Clarke lifting his jacket and reaching for something secured in his waistband. As the two men approached a six-foot high privacy fence, Clarke threw the object he had removed from his waistband over the fence. At that point, Sypher ordered Clarke to lie flat upon the ground. Officer Sypher could only identify the object he had seen Clarke throw as a bundle roughly eight inches in length, "a fairly large object."

As in the incident of September 6, 1997, Clarke resisted Officer Sypher's efforts to place him in custody. Two other officers arrived on the scene and helped Sypher subdue Clarke. Once Clarke was in custody, Officer Sypher investigated the other side of the privacy fence. He found a loaded handgun embedded in the soft, recently graded dirt on that side of the fence, with no other objects or debris nearby. Although the ground was covered with frost, there was none on the gun. The gun was covered with fresh droplets of blood. When Sypher returned to his patrol car, he found that Clarke had open cuts on his fingers and knuckles.

Officer Sypher testified at trial that, soon after apprehending Clarke, he noticed that the expiry date on Clarke's license tags was actually March 16, 1998. He testified that the "6" was written in such a manner that he had mistaken it for a "0."

Based on the course of events outlined above, Clarke was charged with resisting arrest and possession of a concealed weapon, third or subsequent offense. He was convicted of both charges in a bench trial on November 12, 1998.

## Analysis

We have previously stated the applicable standard of review for an appeal of a denied motion to suppress, and the law governing warrantless arrests and Terry stops. The facts of the March 12, 1998 incident raise additional questions of law, however.

The basis of Clarke's claim with respect to the events of March 12, 1998, is that he was unlawfully seized and searched by Officer Sypher because Sypher misread the date on the license plate. As a consequence, Clarke contends the evidence of the handgun should have been excluded from trial and all charges against him dismissed. The Commonwealth contends that Clarke was not seized within the meaning of the Fourth and Fourteenth Amendments until Officer Sypher physically apprehended him. For the reasons that follow, we affirm Clarke's convictions.

We have held that when a police officer signals a motorist with his flashing lights, a reasonable motorist would conclude that he must comply with the officer's authority and stop, and such a stop constitutes a Fourth Amendment seizure. See Barrett v. Commonwealth, 18 Va. App. 773, 775, 447 S.E.2d 243, 245

(1994) (en banc), reversed on other grounds, 250 Va. 243, 462 S.E.2d 109 (1995). However, the United States Supreme Court has held that a person's belief, following a police officer's show of authority, that he is not free to leave the scene, does not in itself render the person seized; he also must comply, or be made to comply, with the show of authority before a seizure occurs. See California v. Hodari D., 499 U.S. 621, 626 (1991).

"While we review de novo ultimate questions of reasonable suspicion and probable cause, we 'review findings of historical fact only for clear error . . . and give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" Ramos v. Commonwealth, 30 Va. App. 365, 368, 516 S.E.2d 737, 739 (1999) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). Officer Sypher ordered Clarke to stop his car in order to investigate the date on Clarke's license plate, which appeared to indicate the plates had expired. We find no clear error in the trial court's conclusion that Sypher ordered Clarke to stop based on his observation of the plate, and we accordingly affirm that finding. Additionally, we agree with the trial court that Sypher's suspicion, based upon his observation, was reasonable. It was based upon this reasonable suspicion that Sypher ordered Clarke to pull over.

Clarke responded to Officer Sypher's signal by stopping his vehicle; consequently, Clarke was "seized" as a result of his compliance with Officer Sypher's show of authority. See Hodari D., 499 U.S. at 626; Barrett, 18 Va. App. at 775, 447 S.E.2d at 245. We have previously equated routine traffic stops with Terry stops. See Stroud v. Commonwealth, 6 Va. App. 633, 637, 370 S.E.2d 721, 723 (1988) (citing Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984)). "By its very nature . . . a Terry stop is involuntary, and the suspect is not free to avoid it by flight." United States v. Haye, 825 F.2d 32, 35 (4th Cir. 1987); cf. Code § 19.2-77 ("Whenever a person in the custody of an officer shall escape . . . such officer, with or without a warrant, may pursue such person anywhere in the Commonwealth and, when actually in close pursuit, may arrest him wherever he is found."). Thus, having complied with Officer Sypher's show of authority, Clarke was not free to leave the scene until Sypher completed his investigation of Clarke's license plate. Officer Sypher was, therefore, authorized to pursue Clarke when Clarke fled, and to arrest Clarke upon apprehending him. Moreover, Sypher's observation of Clarke throwing an object over a fence during the pursuit provided Sypher with reasonable suspicion to investigate the object. The handgun Sypher found was, therefore, properly admitted at Clarke's trial. Because Clarke physically resisted

Officer Sypher's lawful attempt to arrest him, we affirm his conviction on that charge.

Turning to Clarke's challenge to the sufficiency of the evidence introduced against him on this concealed weapon charge, we note that our standard of review is well established:

> When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom. The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.

Clark v. Commonwealth, 30 Va. App. 406, 409-10, 517 S.E.2d 260, 261 (1999) (quoting Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988)). "If there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial." Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998). A reviewing court must accord the judgment of a trial court sitting without a jury the same weight as a jury verdict. See Clay v. Commonwealth, 30 Va. App. 254, 258, 406 S.E.2d 684, 685 (1999).

Applying these standards to the evidence in the record, we find no clear error in the trial court's verdict. Officer Sypher testified that he did not see a weapon on Clarke's person

- 12 -

when Clarke exited his vehicle, but, during the ensuing chase, he saw Clarke lift up his jacket, remove an item, and throw it over the fence. Clarke was wearing a "thigh-length black leather jacket" that "was pulled tight around his body." The court's inference, as fact finder, that the item concealed beneath Clarke's jacket was the handgun recovered from the other side of the fence is supported by the evidence presented and could reasonably be drawn. "This Court does not substitute its judgment for that of the trier of fact, and the trial court's judgment will not be set aside unless plainly wrong or without evidence to support it." Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999) (citations omitted). We find the evidence sufficient beyond a reasonable doubt to support Clarke's conviction for carrying a concealed weapon, and we affirm it.

## INCIDENT OF APRIL 30, 1998

### Facts

At 8:24 p.m. on April 30, 1998, Hampton Police Officer Christopher McIntire, the same officer involved in the September 6, 1997 incident, was patrolling Shell Road in a marked patrol car. He observed an individual exit from a bronze-colored Cadillac. This person turned, looked at McIntire's patrol car, and then quickly turned around again and walked away from the Cadillac. McIntire testified that he knew that a number of

- 13 -

vehicles in the area had been stolen and that, because of the conduct of the driver of the Cadillac, he decided to investigate further. He requested dispatch to run a check on the car's tags to determine if it had been stolen. Although the dispatcher determined that the tags did not belong to a stolen vehicle, McIntire, reasoning that an interval of time often exists between a report of a stolen vehicle and its entry into the police computer system, decided to approach the car "to see if the ignition had been jimmied."

Officer McIntire parked his patrol car behind the Cadillac, activated his "secondary" lights, visible only from the back, and approached the Cadillac on foot. As McIntire approached the vehicle, he observed the individual who had exited the Cadillac walk down the street away from the car. He thus believed the vehicle was unoccupied. McIntire could not see into the vehicle as he approached, but when he walked to the driver's side of the car he noticed a man sitting in the passenger's side front seat, with one arm positioned behind his seat. McIntire asked him to produce identification. When the individual offered his identification, McIntire recognized him to be Clarke, whom he had arrested previously. McIntire then radioed Officer Brian Snyder, whom he knew to be nearby, to come to the scene "for security reasons." McIntire asked Clarke what he was doing in the car and who owned it. The name of the owner given by Clarke

in response to McIntire's question matched the name found when dispatch checked the vehicle's tags.

When Officer Snyder arrived, he approached the Cadillac from the passenger's side and observed a handgun in a pocket compartment in the fabric covering the back of the passenger's seat. After Snyder alerted McIntire to the presence of a weapon, McIntire instructed Clarke to exit the vehicle. McIntire then placed Clarke in handcuffs. The officers recovered a handgun from the compartment behind the passenger's seat, as well as a small amount of marijuana.

Upon searching Clarke's clothes at the jail, McIntire found a small rock of crack cocaine. He also found a small bag of marijuana in Clarke's underwear. Additional amounts of crack cocaine were found in the right pants leg of Clarke's sweatpants and secreted between Clarke's buttocks.

Based on the above course of events, Clarke was charged with possession of a concealed weapon, third or subsequent offense, possession of cocaine with intent to distribute, possession of marijuana, and possession of a firearm while being in possession of cocaine with intent to distribute. He was convicted of each charge, except possession of a concealed weapon, third or subsequent offense, in a bench trial on November 12, 1998.

Clarke contends he was illegally detained at the vehicle site by McIntire, arguing he was seized when McIntire pulled up behind the Cadillac and turned on his secondary lights. His claim is without merit.

The officer's approach to a parked car on a public street for investigative purposes does not constitute a seizure of either the car or the individuals found in it. See Woodson v. Commonwealth, 245 Va. 401, 407, 429 S.E.2d 27, 30 (1993) (Lacy, J., concurring) (citing Florida v. Royer, 460 U.S. 491, 497 (1983)); Carson v. Commonwealth, 244 Va. 293, 294, 421 S.E.2d 415, 416 (1992); Baldwin v. Commonwealth, 243 Va. 191, 196-97, 413 S.E.2d 645, 648 (1992); Reittinger v. Commonwealth, 29 Va. App. 724, 730-31, 514 S.E.2d 775, 778 (1999). Although an officer's activation of his cruiser's flashing lights before he approaches a parked vehicle may be construed as a seizure for Fourth Amendment purposes, see Lawson v. Maryland, 707 A.2d 947, 951 (Md. Ct. Spec. App. 1998); Oregon v. Walp, 672 P.2d 374 (Or. Ct. App. 1983); Washington v. Stroud, 634 P.2d 316 (Wash. Ct. App. 1981), we do not address such facts here, as McIntire testified that he activated his "secondary" lights, visible only from the rear of the cruiser. Because these lights were not visible to Clarke, their activation could not alter his perception of his freedom to leave, and thus could not effect a

seizure.  Furthermore, McIntire was permitted to ask Clarke questions without violating his Fourth Amendment rights.  See Richmond v. Commonwealth, 22 Va. App. 257, 261 n.1, 468 S.E.2d 708, 709 n.1 (1996) (citing Royer, 460 U.S. at 497); see also Richards v. Commonwealth, 8 Va. App. 612, 615, 383 S.E.2d 268, 270 (1989) (Fourth Amendment not implicated when police officers approached defendant, who was standing outside an airport terminal, and asked to see his airline ticket and identification).  McIntire's encounter with Clarke was therefore consensual.

"[A] weapon is hidden from common view under Code § 18.2-308(A) when it is 'hidden from all except those with an unusual or exceptional opportunity to view it.'"  Winston v. Commonwealth, 26 Va. App. 746, 756, 497 S.E.2d 141, 146 (1998) (quoting Main v. Commonwealth, 20 Va. App. 370, 372-73, 457 S.E.2d 400, 402 (1995) (en banc)).  The gun found in the pocket of the vehicle seat in which Clarke was seated was concealed from common view, and became visible to Officer Snyder only when he approached the front passenger seat of the Cadillac close enough for him to peer down into the seat's pocket compartment from directly above.  The discovery of Clarke's handgun provided the officers with probable cause to arrest Clarke for possession of a concealed weapon.  Having arrested Clarke lawfully for possession of a concealed weapon, his search at the police

station was reasonable, see Illinois v. Lafayette, 462 U.S. 640 (1983), and the drug evidence produced as a result of that search was properly admitted into evidence on the drug-related charges for which Clarke was prosecuted. See Moss v. Commonwealth, 29 Va. App. 219, 224, 516 S.E.2d 246, 248 (1999).

We next examine whether the evidence was sufficient to convict Clarke on the charges of possession of cocaine with intent to distribute, possession of marijuana, and possession of a firearm while being in possession of cocaine with intent to distribute. When an appellant challenges the sufficiency of the evidence below, the appellate court must accord the judgment of the trial court sitting without a jury the same weight as a jury verdict. See Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42, cert. denied, 502 U.S. 944 (1991). The evidence is viewed in the light most favorable to the Commonwealth, granting it all reasonable inferences fairly deducible. See Yancey v. Commonwealth, 30 Va. App. 510, 513, 518 S.E.2d 325, 326 (1999). The appellate court must examine the evidence tending to support criminal convictions and allow them to stand unless they are plainly wrong or without evidentiary support. See id. Furthermore, appellate review is limited to specific sufficiency arguments raised at trial. See George v. Commonwealth, 242 Va. 264, 281 n.4, 411 S.E.2d 12, 22 n.4 (1991).

"Possession with intent to distribute is a crime which requires 'an act coupled with specific intent.'"  Stanley v. Commonwealth, 12 Va. App. 867, 869, 407 S.E.2d 13, 15 (1991). Intent is the purpose formed in a person's mind which may be inferred from the surrounding circumstances in a particular case.  See David v. Commonwealth, 2 Va. App. 1, 3, 340 S.E.2d 576, 577 (1986).  Possession of a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it.  See Hunter v. Commonwealth, 213 Va. 569, 570, 193 S.E.2d 779, 780 (1973). Additional evidence of intent to distribute includes the method in which the drugs seized are packed.  See Monroe v. Commonwealth, 4 Va. App. 154, 156, 355 S.E.2d 336, 337 (1987). Possession of a gun is also a factor which the trier of fact can consider.  See Burchette v. Commonwealth, 15 Va. App. 432, 436, 425 S.E.2d 81, 84 (1992).

In the case before us, Clarke had cocaine in three places on his body, including between his buttocks.  Expert testimony in the case established that the amount of cocaine found on Clarke was inconsistent with personal use and that users did not hide drugs between their buttocks.  No paraphernalia for smoking the drugs was found, and a .45 pistol was found in Clarke's possession.  This evidence is sufficient to support Clarke's conviction of possession of cocaine with intent to distribute.

Clarke also was found in possession of a small bag containing marijuana, which was sufficient to support his conviction for possession of marijuana.

Finally, we find sufficient evidence to support Clarke's conviction for possession of a firearm while in possession of cocaine with intent to distribute.

> To support a conviction based upon constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the [item] and that it was subject to his dominion and control."

Hancock v. Commonwealth, 21 Va. App. 466, 469, 465 S.E.2d 138, 140 (1995) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 749 (1984)).

Clarke was the only occupant of the vehicle at the time he was arrested, and his hand was seen reaching behind his seat, toward the location of the gun, when McIntire first observed him. From these facts, the court could properly infer that Clarke was aware of the firearm's presence in the seat pocket of the vehicle and that it was in his possession while he was in possession of cocaine with the intent to distribute it. In short, we find the evidence proves beyond a reasonable doubt Clarke's guilt on this charge.

For the reasons stated in this opinion, we affirm Clarke's convictions.

Affirmed.