COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia


CARLOS J. McCRAY

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 1877-06-1                           JUDGE JAMES W. HALEY, JR.
                                                              JANUARY 22, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

        Richard C. Clark (Minna Sankaran, Assistant Public Defender;
        Office of the Public Defender, on brief), for appellant.

        Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
        Attorney General, on brief), for appellee.


        Carlos McCray ("appellant") was convicted after a bench trial of assault and battery of a

police officer, robbery, and the use of a firearm in the commission of a felony.  Appellant

appeals his convictions.  He contends that the trial court erred in denying his motion to suppress

evidence obtained as the result of an investigative detention.  Appellant also argues that there

was not sufficient evidence to support his convictions.  For the reasons that follow, we affirm.

                                      STATEMENT OF FACTS

        On May 19, 2005, Joshua Roth worked for Domino's Pizza.  Mr. Roth responded to a

pizza order to a residence at 5844 Pickering Street in Virginia Beach.  Mr. Roth testified that,

fifteen to twenty seconds after he knocked on the door, someone put a pistol to his head and stole

his cellular telephone, about eighty dollars in cash, and the pizza.  The robber approached Mr.

Roth from behind, and Mr. Roth did not have a full view of the man's face.  Mr. Roth was

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

therefore unable to positively identify the robber. However, Mr. Roth did testify that the robber was armed with a pistol that had a silver slide. He also was able to see that the robber was a black male wearing a dark hooded sweatshirt.

After stealing Mr. Roth's belongings, the robber pushed the back of Mr. Roth's head with the gun. He told Mr. Roth, "Get out of my fucking neighborhood." Then the robber ran to the side of the house. Mr. Roth went back to his car and drove directly back to Domino's. From there he called the police department, and soon several police officers came to 5844 Pickering Street. When Officer Carila arrived at the residence, appellant and his brother, Eric McCray, were telling Officer Calvert that they had ordered the pizza from the address, heard a knock at the door, but found no one when they opened the door. Appellant and his brother then began walking away from the residence. Officer Shaw told Officer Carila that the two brothers were witnesses, and Officer Carila followed them and tried to persuade them to come back and speak to a detective. Appellant told him that he would not speak to the detective because they were going to his grandmother's house and were already late.

When he first arrived at the residence, Officer Carila considered appellant and his brother to be witnesses, rather than suspects. He held this opinion because very early in their investigation Officers Calvert and Shaw believed that a black pickup truck might be involved and were speaking to two men in a black pickup truck. Appellant walked away from the house on foot, and his brother accompanied him on a bicycle. As his brother waited for him on a footpath, appellant turned around and retrieved a cigarette from another man who was standing next to a fence in the front yard of a townhouse in the neighborhood. Officer Carila testified that he saw some kind of "hand-to-hand transaction" between appellant and the other man. But he did not know at the time that what the man had given appellant was a cigarette. Appellant quickly went back onto the path to rejoin his brother. Officer Carila told Detective

- 2 -

Vanderheiden that the two men were walking away and asked her whether he should detain them. Detective Vanderheiden asked Officer Carila to do so.

Officer Carila went with Sergeant Spry to stop appellant and his brother. Officer Carila testified that appellant became angry, told the officers they had no right to detain him, used profanity, and continued walking away from the officers. Officer Carila then grabbed appellant and placed him in handcuffs. In the course of patting appellant down for weapons, Officer Carila felt a hard object and asked appellant what it was. Appellant replied that he didn't know. Officer Carila went into the pocket and retrieved a cellular telephone.[1] Appellant first said he did not know whose telephone it was. Then appellant said he used it from time to time. At trial, Mr. Roth identified the telephone Officer Carila recovered from appellant as the telephone the robber had taken from him.

Detective Rowland asked appellant's mother for permission to search the house at 5844 Pickering Street. After receiving her permission, the police found two Domino's pizza boxes inside the house. Later, at appellant's trial, a fingerprint examiner testified that fingerprints taken from the pizza boxes matched the prints taken from appellant after his arrest.

Next Detective Rowland returned to police headquarters and interviewed appellant. At first, appellant denied involvement in the robbery. He also stated that he found Mr. Roth's telephone when he heard it ringing from the upstairs of his house and found it in the backyard. He also said he knew nothing about the pizza found in his house. Later in the interview, "[h]e finally stated that he had robbed the pizza man. He stated that he had a drug problem that made him do it." While admitting the robbery, appellant denied using a firearm. Instead, "[h]e stated that he had a hammer which he held in his hand like a gun."

---

[1] Appellant's argument on brief is that Officer Carila illegally detained him. He does not argue that the officer's reach into his pocket exceeded the permissible scope of a Terry stop. Thus, we do not decide the latter question.

At trial, appellant testified his brother ordered the pizza. He also testified that he and his brother were playing a video game and listening to music, when they heard a noise on the ground, saw a man in a "black hoodie," and chased him. Appellant said that the man dropped the phone and that he picked it up. Appellant also testified that he spoke to a police officer, "an old dude," after the man ran away. Appellant said that he told this policeman that someone had broken into his house. Appellant also said the reason he did not tell the police that he found the phone was that it was his because he found it. Appellant testified Detective Rowland tricked him into confessing by falsely telling appellant that his brother had confessed.

## ANALYSIS

In reviewing a trial court's denial of a motion to suppress, we consider the evidence in the light most favorable to the Commonwealth. McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc). "[A] defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." King v. Commonwealth, 49 Va. App. 717, 720, 644 S.E.2d 391, 392 (2007) (citing Ornelas v. United States, 517 U.S. 690, 691 (1996)). When considering the sufficiency of the evidence on appeal, we give the benefit of all reasonable inferences deducible from the evidence to the party prevailing below. Shropshire v. Commonwealth, 40 Va. App. 34, 38, 577 S.E.2d 521, 523 (2003). We will not set aside the judgment of the trial court unless it is plainly wrong or without evidence to support it. Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

### Investigative Detention

Appellant argues that Officer Carila's seizure of him was an illegal detention not based on a reasonable, articulable suspicion that criminal activity was afoot. His contention is that the police considered him and his brother to be witnesses to the crime, rather than suspects. Officer

Carila, appellant continues, exceeded his authority by detaining them just so that they would speak to the detective. We disagree because the circumstances of suspicion in this case were stronger than appellant's mere refusal to cooperate.

Even an officer without probable cause to arrest may stop and briefly detain a person to investigate a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968). Appellant is correct that his mere refusal to cooperate with police, without more, does not justify a detention or seizure. Florida v. Bostick, 501 U.S. 429, 437 (1991). We believe, however, that appellant's argument places too much emphasis on the subjective intent of the police. The relevant inquiry is not whether these particular policemen considered appellant and his brother to be suspects or witnesses. "Justification [for a Terry stop] does not depend on the subjective intent of the police. Compliance with the fourth amendment depends, instead, on 'an objective assessment of an officer's actions in light of the facts and circumstances then known to him.'" Bosworth v. Commonwealth, 7 Va. App. 567, 570, 375 S.E.2d 756, 758 (1989) (quoting Scott v. United States, 436 U.S. 128, 136 (1978)).

While appellant's recovery of a cigarette from the man at the townhouse and his refusal to cooperate, standing on their own, may not have furnished the police with an objectively reasonable basis to detain him, an objectively reasonable police officer might have articulated a much stronger circumstance of suspicion. The police were investigating a pizza delivery driver's allegation of robbery. They learned the driver was robbed in the course of making a delivery to 5844 Pickering Street. Appellant and his brother admitted, before the seizure, that they were the ones who ordered the pizza from that very house.[2]

---

[2]Appellant's trial testimony was that he told one of the police officers that "somebody just broke in my house." The contradiction between this statement and Officer Carila's testimony that appellant and his brother told police that they had ordered the pizza, heard a

- 5 -

While it may not amount to probable cause, ordering the pizza was suspicious because whoever ordered the pizza knew where the delivery driver was going. Seeing appellant and his brother at the house and learning that they had ordered the pizza made it reasonable to infer that they were in or around the house at the time of the robbery. To suspect appellant and his brother of committing the robbery or assisting the robber was therefore reasonable. It only seems more reasonable when considering the most likely, albeit counter-intuitive, alternative possibility: that an armed man was making his way through the neighborhood, saw Mr. Roth in his car, and decided, on impulse, to rob him. Of course, ordering the pizza did not prove that appellant committed the robbery or planned the robbery. It did not prove the robber knew where to wait for the delivery driver. It did not even disprove the theory that Mr. Roth was the nearest target of opportunity of an armed man wandering the neighborhood, intending to rob the first person he saw. However, "[t]he test for reasonable suspicion under Terry is less stringent than the test for probable cause." Clarke v. Commonwealth, 32 Va. App. 286, 294, 527 S.E.2d 484, 488 (2000). Indeed, even lawful activities may create a reasonable suspicion under the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 9 (1989); see Terry, 392 U.S. at 22.

> "[I]nnocent behavior will frequently provide the basis for a showing of probable cause," and that "in making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." That principle applies equally well to the reasonable suspicion theory.

Sokolow, 490 U.S. at 10 (quoting Illinois v. Gates, 462 U.S. 213, 243-44 n.13 (1983)).

---

knock at the door, and did not see anyone when they opened the door also supports a reasonable suspicion that criminal activity was afoot. Appellant's trial testimony may be considered in deciding an appeal of a denial of a defendant's motion to suppress. Dodd v. Commonwealth, 50 Va. App. 301, 306, 649 S.E.2d 222, 224 (2007); DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987).

The fact that the police officers in this case did not seize appellant until after he refused to cooperate and began walking away does not change our opinion. "Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction." Hoffa v. United States, 385 U.S. 293, 309-10 (1966). We think this language, together with the above quotation from Sokolow treating probable cause as the legal standard, more stringent than, but otherwise analogous to, reasonable suspicion, stands for the proposition that the police did not forfeit their ability to seize appellant simply because they did not seize him as soon as they developed a reasonable suspicion to do so. We therefore hold that the trial court did not err in denying appellant's motion to suppress.

### Sufficiency of the Evidence

Appellant also argues that the evidence at trial was insufficient to sustain his convictions as a matter of law. We disagree. The Commonwealth presented the testimony of Officer Carila that he recovered Mr. Roth's telephone from appellant on the day of the robbery. Detective Rowland also found the Domino's pizza boxes inside of the house. The fingerprint examiner testified that the fingerprints on the pizza boxes matched appellant's fingerprints. The Commonwealth also introduced evidence of appellant's confession. Of course, appellant testified and offered innocent explanations for all of this. But the trial judge was not required to believe him. It is within the province of the trial judge, as the finder of fact, to assess the credibility of the witnesses and the weight to be given to their testimony. Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). The findings of fact of a judge at a bench trial are given the same weight as a jury verdict. Richards v. Commonwealth, 8 Va. App. 612, 613, 383 S.E.2d 268, 269 (1989). We ask ourselves whether any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt. Hoambrecker v. City of Lynchburg, 13 Va. App. 511, 514, 412 S.E.2d 729, 731 (1992). Prosecuting counsel impeached appellant with several prior inconsistent statements, and the trial judge found appellant's testimony to be unworthy of belief. We also affirm appellant's conviction for assaulting a police officer. This conviction was supported by the testimony of Detective Rowland, which the trial court was entitled to believe. We cannot say as a matter of law that this finding was plainly wrong.

Even if his convictions for robbery and assaulting a police officer were supported by sufficient evidence, appellant argues that his firearm conviction was not because no one ever found the alleged firearm and because appellant's confession to Detective Rowland indicated that he used a hammer, not a firearm, to accomplish the robbery. We find that Powell v. Commonwealth, 268 Va. 233, 602 S.E.2d 119 (2004), controls this issue and compels us to reject appellant's argument. In Powell, our Supreme Court ruled that there was sufficient evidence for a conviction under Code § 18.2-53.1 even though no gun was ever located and the defendant told police officers that, though he told the victims of a robbery that he had a gun to scare them into handing over money, he did not really bring a gun with him to the robbery. Id. at 235, 602 S.E.2d at 120. Appellant asks us to distinguish Powell from this case because, in Powell, the defendant said he had a gun and appellant, in this case, did not. We do not find this to be a meaningful distinction. If anything, the evidence that appellant violated Code § 18.2-53.1 is stronger than the evidence in Powell because none of the witnesses in Powell ever saw a gun. However, Mr. Roth testified in this case that he did see a gun and the trial judge, as finder of fact, was entitled to accept this testimony.

Accordingly, we conclude that the trial court did not err in denying appellant's motion to suppress and in finding the evidence sufficient to convict him.

Affirmed.