UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Beales and O'Brien
Argued at Norfolk, Virginia


LAVON LAWRENCE GORDON, S/K/A
  CORDARALL DESHAWN GORDON

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1329-15-1                        JUDGE RANDOLPH A. BEALES
                                                    JANUARY 24, 2017

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                          Leslie L. Lilley, Judge

            T. Gregory Evans, Assistant Public Defender, for appellant.

            Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
            Attorney General, on brief), for appellee.


        Following a bench trial on September 3, 2014, the trial court convicted Lavon Lawrence

Gordon ("appellant") of possession of a firearm by a convicted felon in violation of Code

§ 18.2-308.2. On appeal, appellant challenges the sufficiency of the evidence in support of that

conviction.[1] For the following reasons, we affirm the trial court.

                                      I. BACKGROUND

        We consider the evidence on appeal "in the light most favorable to the Commonwealth, as

we must since it was the prevailing party" in the trial court. Beasley v. Commonwealth, 60

Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant also assigned error to the admission into evidence of the gunshot residue kit, the related certificate of analysis, and a forensic scientist's testimony about it because appellant claims the Commonwealth failed to establish a proper chain of custody. This Court did not grant an appeal on that assignment of error so it is not before us now on appeal.

330, 601 S.E.2d 555, 574 (2004)). So viewed, at around 6:47 p.m. on March 29, 2014, Virginia Beach Police Officers J.E. Roberts and Jesssica Hosang were on patrol in a marked police cruiser in the 3300 block of Zurich Arch. While driving down an alleyway, the officers observed a two-door Lexus sedan and two individuals, appellant and Audrey Harper. With the windows of their cruiser rolled down, the officers detected an odor of marijuana coming from the sedan and from the two individuals. The officers approached appellant and Harper on foot and made contact.

Officer Hosang testified that appellant was inside the vehicle in the back seat behind the driver's seat when she first observed him. She testified that Harper was already outside of the vehicle. Officer Roberts testified that she observed appellant standing next to the driver's door. She noticed that the driver's side door was open and the driver's seat was folded down. Roberts testified that she then observed appellant lean into the vehicle through the open driver's side door towards the center console. When the officers asked appellant and Harper who was the owner of the vehicle, both individuals responded that they did not know. Officer Roberts testified that appellant eventually stated that the vehicle belonged to his aunt. Officer Roberts testified that Harper was in possession of the keys. Officer Roberts also then testified that Harper told her that she and appellant "were listening to music and she said that he passed her the keys so that she could turn the car ignition on and listen to music." Appellant and Harper told Officer Hosang that they had just smoked marijuana inside of the vehicle.

The officers performed a background check and determined that appellant was a convicted felon. Officer Roberts then searched the back seat area of the vehicle while Officer Hosang searched the front area of the car. Officer Roberts found a bag of marijuana on the back seat of the sedan. When searching around the front passenger seat of the vehicle, Officer Hosang located a handgun concealed underneath the floor mat. The handgun was a 9mm black Ruger P95, loaded with sixteen rounds of ammunition (one round in the chamber, fifteen roads in the magazine).

Officer Hosang testified that she did not announce the discovery of the firearm "for safety reasons" due to the fact that appellant was not yet in handcuffs. At that point, the officers handcuffed and detained appellant, and then placed him in the back of a police vehicle.

Officer Hosang read appellant his Miranda rights. Appellant stated that he understood his rights and stated that he wished to have an attorney present. Officer Hosang "told [appellant] that was no problem" and informed appellant that he was being placed under arrest for possession of marijuana and possession of a firearm by a convicted felon. In response, appellant then stated, "You'd seen me get out of the back seat." Officer Hosang then asked appellant if he wished to waive his Miranda rights. In response, appellant stated, "How am I in the back seat getting charged with having a gun?" At that point, the officers had not told appellant anything else about a firearm or where it had been located.

Officer Roberts then obtained a gunshot residue ("GSR") test kit and performed a GSR test on appellant's hands. She testified that she wore plastic medical gloves when she handled the unopened GSR test kit and that she never touched the gun recovered at the scene. Officer Roberts also testified that she had not fired her firearm in several months at the time of this encounter with appellant. Douglas DeGaetano, a forensic analyst with the Virginia Department of Forensic Science, testified at trial as an expert in the analysis of gunshot residue. DeGaetano examined the results of the GSR test kit and found "particles that were highly specific for primer residue" on both of appellant's hands. DeGaetano testified, "Primer residue can be deposited on the hands of an individual either by firing a weapon, by being in proximity to the discharge of a weapon, by handling a weapon, or coming into contact with something that has primer residue on it." DeGaetano noted, however, that the GSR test kit "can't tell you which one of those things occurred." He also testified that, when accounting for "normal activity of a human being,

typically this material, you have a window of about four to six hours to collect this material" before the possibility of finding primer residue becomes remote.

Audrey Harper testified that she did not have a firearm with her on March 29, 2014 and that she did not see the firearm under the floor mat. Harper testified that she had been dropped off at that location and that she had not arrived with appellant. Harper stated that she had been with appellant for "a couple of hours" before the police arrived. She testified that she smoked marijuana with appellant inside the sedan. Harper also testified that she was sitting in the driver's seat and that she had not been seated in the front passenger seat at any time. Harper admitted that she has been convicted of crimes involving lying, cheating, or stealing. While Harper was in possession of the car keys when the officers arrived, she testified that appellant had given the keys to her.

Appellant, testifying in his own defense, stated that he arrived at the location where the police found him (outside of his aunt's house) with two other individuals. He also stated that the sedan belonged to his cousin. Appellant testified that he was a passenger in the back seat of the sedan. Appellant denied that the firearm recovered from the vehicle was his gun and denied ever possessing it.

The trial court found that appellant was in custody and control of the sedan. The court also found from the evidence that appellant had possession of the keys and had been inside of the car for at least two hours. The trial court noted that the firearm was not found in the glove box or in the trunk of the vehicle or any other place where one might store a gun. The trial court concluded from the evidence that the firearm was placed there "so it could be retrieved quickly or be put away quickly, one of the two, because you would never store a gun under a floor mat." The trial court rejected appellant's theory that the primer residue got on his hands from his contact with the officers or his placement in the police vehicle.

## II. ANALYSIS

### A. STANDARD OF REVIEW

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, 601 S.E.2d at 574, "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

### B. SUFFICIENCY OF THE EVIDENCE

Appellant was convicted of possession of a firearm by a convicted felon in violation of Code § 18.2-308.2. He does not dispute that he was previously convicted of a felony. Instead, appellant challenges the sufficiency of the evidence to prove beyond a reasonable doubt that he constructively possessed the firearm.

> A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession; evidence of actual possession is not necessary. To establish constructive possession of the firearm by a defendant, the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control. While the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to the firearm, it is a circumstance probative of possession and may be considered

as a factor in determining whether the defendant possessed the firearm.

Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008) (citations and quotations omitted). Thus, the issue of whether appellant constructively possessed a weapon is "largely a factual one." Smallwood v. Commonwealth, 278 Va. 625, 631, 688 S.E.2d 154, 157 (2009) (quoting Ritter v. Commonwealth, 210 Va. 732, 743, 173 S.E.2d 799, 807 (1970)).

Here, the trial court's finding of constructive possession was based on more than appellant's mere proximity to the firearm. First, Officer Roberts observed appellant lean into the driver's side door towards the area where the firearm was located. Photographs of the firearm taken from the scene indicate that the handle of the weapon was facing the driver's side of the car – a circumstance that strongly suggests that it was appellant who placed the weapon under the floor mat while he leaned over from the driver's side of the car as the officers approached the vehicle. This evidence, viewed in the totality and in the light most favorable to the Commonwealth, supports the trial court's conclusion that appellant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control. See Adkins v. Commonwealth, 217 Va. 437, 438-39, 229 S.E.2d 869, 870 (1976) (evidence sufficient to support a conviction for constructive possession of marijuana found on driver's floorboard of the vehicle when the defendant was the only person in the front seat and the police officer, when approaching the car, saw him move from the driver's seat to the passenger seat); see also Clarke v. Commonwealth, 32 Va. App. 286, 305, 527 S.E.2d 484, 494 (2000) (evidence proved possession beyond a reasonable doubt when defendant was the only occupant of the vehicle and his hand was seen reaching behind his seat toward the location of the gun).

Other facts and circumstances demonstrate that appellant was aware of the presence and character of the firearm in the vehicle and that the firearm was subject to his dominion and control. The trial court relied on Harper's testimony and her statements to Officer Roberts to

conclude that appellant had possession of the keys to the vehicle and that the vehicle was subject to his custody and control immediately prior to his arrest. In addition, Officer Roberts performed a GSR test on appellant's hands after he was placed under arrest. The expert testimony of Douglas DeGaetano, the forensic analyst from the Virginia Department of Forensic Science, established that the test was positive for primer residue on both of appellant's hands. DeGaetano testified that primer residue may come to be on an individual's hands by firing a weapon, by being in proximity to the discharge of a weapon, or by simply handling a firearm. DeGaetano also testified that there is "a window of about four to six hours to collect" primer residue. While the presence of primer residue on appellant's hands in isolation perhaps would not provide sufficient evidence to support appellant's conviction, that evidence, considered together with the evidence that appellant had custody and control over the vehicle, the fact that the officer testified that she saw appellant leaning toward the location of the gun, and the positioning of the gun under the floor mat, constitute facts and circumstances that support the trial court's finding of constructive possession.

Finally, appellant's own statements to the officers also supported the trial court's finding that appellant constructively possessed the firearm. When appellant was informed at the scene that he was being placed under arrest for possession of marijuana and possession of a firearm by a convicted felon, appellant stated, "How am I in the back seat getting charged with having a gun?" At the time appellant made that statement, the officers at the scene had not removed the firearm from under the floor mat of the front passenger seat and had not told appellant where in the vehicle the firearm was located. From this evidence, the trial court could reasonably infer that appellant's spontaneous utterance is a highly probative circumstance in support of the finding that he was aware of the presence and character of the firearm concealed in the front of the

vehicle – and that his statements were an attempt to distance himself from the firearm to hide his guilt.

Finally, while appellant denied at trial that the firearm recovered from the vehicle was his gun and denied ever possessing it, the trial court, sitting as fact finder, was entitled to reject appellant's testimony. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). In addition, "the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." Ervin v. Commonwealth, 57 Va. App. 495, 516, 704 S.E.2d 135, 145 (2011) (*en banc*) (quoting Haskins v. Commonwealth, 44 Va. App. 1, 11 n.3, 602 S.E.2d 402, 407 n.3 (2004)). Accordingly, the trial court could consider appellant's dishonest, self-serving testimony as additional evidence supporting appellant's conviction.

In summary, based on the totality of the circumstances found in the record, there was sufficient evidence for a rational factfinder to conclude beyond a reasonable doubt that appellant constructively possessed the firearm. The trial court's finding of constructive possession was supported by the evidence of appellant's proximity to the firearm, his movements towards the location of the firearm as the police officers approached, the GSR test results showing gun primer residue on both of appellant's hands, appellant's statements to police regarding his position in the car relative to the location of the firearm, the reasonable inference from those spontaneous utterances that appellant knew about the gun concealed under the floor mat, and the trial court's rejection of appellant's self-serving testimony at trial. Accordingly, the evidence was certainly sufficient for a rational trier of fact to conclude that the element of constructive possession of the firearm had been proven beyond a reasonable doubt. Therefore, the judgment of the trial court is affirmed.

III. CONCLUSION

For the foregoing reasons, we affirm appellant's conviction for possession of a firearm by a convicted felon in violation of Code § 18.2-308.2.

<u>Affirmed.</u>